All right, Mr. Kiggins, if you'd like to begin. Thank you, Your Honor. May it please the Court, this is a case in which the NLRB dismissed the same case in July of 2014, did nothing with it for the next eight years, then just last year sent a notice to the Halls, who are the owners of this small plumbing company, that they were reinstating the dismissed case. And what we're here today for is the Board's contention that this Court should deny Allservice their appeal rights under 29 U.S.C. section 160 E and F. I want to break my argument down into two main parts. The first part is I'm calling them substantive issues, they're really procedural issues because we're at a very strange procedural posture in this case. There's no record filed, which we think the Board should have filed already, but it's not. But I'm going to call them substantive issues. First one is . . . Mr. Kiggins, I'm sorry to interrupt you, but I just had a quick question on the record thing. Is that the reason why I can't find the July 2014 Board order dismissing the case after Noel Canning? I don't have it. I can't . . . I've looked through my records. I can't find it. It's as if it hasn't been filed. Is it because the Board hasn't filed a record in this case? I think that's right. I think that's right. Although I think a copy of that order was in the earlier case when they filed the enforcement action back in 2014. They moved for dismissal back then, and I think that order is in there. But that's part of our argument about the extraordinary circumstances. Eight years have passed. The halls have suffered two major floods. They've lost their records. I'm a new attorney that just got hired by them recently. I don't have the record. Your Honors don't have the record. I read the procedural rules to indicate that the Board, once they file this petition for enforcement or for summary proceeding, they're supposed to file the record. It hasn't been filed. And frankly, I was a little surprised when we got set for oral argument because we haven't filed briefs. There's been no records submitted. So we think my two substantive arguments, one is all service at a minimum should be entitled to its appeal rights under 29 U.S.C. section 160E and F and federal rules of appellate procedure 15 through 20. My second substantive procedural argument is if the Board had followed the proper procedure back in 2014, we wouldn't be here. So the case should really be dismissed with prejudice at this point. I want to spend, before I get to those two substantive arguments, I want to spend a few minutes talking about the procedural history, some of which is in the pleadings, some of which is not. But I think it's important to put this in context. The underlying facts date back to 2009. That's, I'm not good at math, 14 years ago. The back pay awards started when the layoffs occurred in January of 2010. The ALJ's decisions in this case were rendered in 2011 and 2013. The Board indicates in its petition to this court, the current petition, that all service had requested an extension of time for filing exceptions to the ALJ's decision. That's in paragraph three of their petition or application for some reinforcement in this case. What they don't say is the reason for that extension, the reason it was granted is because all service agreed to engage in the NLRB ADR program. I don't know what happened in that ADR program. We still don't have a record, but that's why that initial extension was granted and the attorney that they did have, all service did have back then, withdrew from the case. So we don't know what happened in that ADR process. That's important because one of the issues in the enforcement action that they're filing now is that ALJ's decision continues the back pay. Even through today, they're continuing the back pay because it says no offer of reinstatement was made. My client tells me that they made an offer of reinstatement. I don't know if it was in the ADR process, but again, we don't have a record, so we don't know if that's in the record. All right. Back to the timeline, May of 2014, the board filed the first case for enforcement that got dismissed. June of 2014, one month later, and I think this is significant, is when the Supreme Court issued the Noel Canning decision saying that the board was improperly composed, didn't have a quorum during a certain time period, and that time period is going to be very important that I want to hit on. It raises a question of why did they file the first enforcement action one month before the Supreme Court issued the Noel Canning decision? I understand they couldn't have predicted when Noel Canning was decided, but something is not right about this whole process. Noel Canning, the board knew that the Ninth Circuit ruled against them in the Noel Canning decision and said that those decisions, the board was not properly composed during that time period. They had oral argument, this is from the Noel Canning decision, in January of 2014, which was five months, four months before they filed the petition for enforcement in this action, the first time around, all the briefing had been done, so they had some idea of what was going to happen in the Supreme Court. So why file this enforcement action back then? What's not clear in this record, but is clear from the Noel Canning decision, there was no quorum at the board from January of 2012 to August of 2013. Now the reason that's important from my standpoint, from a procedural standpoint, is there was a quorum in 2014 when they filed the first action and when they dismissed the first action. I'm going to come back to that point in just a minute, why that's important. I'll briefly mention it, instead of dismissing that first case, what they should have done is they should have moved for a stay. There are procedures under this court's rules about circumstances like this, you can move to stay a proceeding. They shouldn't have just dismissed the case and then ignored it for eight years. They should have moved to stay, they had the quorum, they could have readopted the decision and moved to lift the stay. And I'll come back to why that's particularly important. Instead they waited eight years and refiled a new action. What I will, the final sequence of events that your honors don't know about, last week we did some research because I thought there's got to be some time limit on these things. Didn't find one, they haven't filed the record, which I think the rules say they're supposed to have filed the record, we went ahead and filed our petition for review to try to force the board to go ahead and file the record because where I think we may end up here, one of the requests we're going to make is that the court deny their current motion or petition for some reinforcement and set this case through the ordinary process where they go ahead, consolidate our motion, our petition for review with their motion for enforcement, order them to file the record, which the clerk has already done, by the way. Counselor, can I pause you on that point? I don't mean to keep interrupting. I want to make sure you have time for your points, but I just want to make sure we understand what's in front of us. Today the only question, as I understand it, and please tell me I'm wrong, is the board's application for some reinforcement. So if we deny that, this case just proceeds like every other NLRB case our court sees with some regularity. Am I? Exactly. Okay. That's exactly right. So the petition's not in front of us. Obviously it was just filed yesterday. They haven't filed the record. They haven't filed a response to the petition. So that'll happen in whatever course that it happens. That's correct. That's exactly right, and that's one of the things, that's one of the alternative remedies that we're asking for is that you deny their petition for some reinforcement, order them to file the record, and then we proceed with the briefing schedule and the issues on the substantive arguments. I'll ask this question to your friend on the other side too, but is it your position that the petition for review was timely filed? Is there any debate about that in your mind? The our petition for review? The one you filed yesterday. I don't believe so. I don't believe so. We did that research, and surprisingly we thought there would be some limitation on when they could seek to reinstate the case. Didn't find it. We looked further. I'm sorry. I might have been imprecise. I meant your petition you filed yesterday. Is that timely filed? I believe it is. I don't believe, we didn't see that there was any time limit on that. I don't think it matters as a practical matter because subsection E and subsection F, subsection E is their enforcement action, subsection F is our petition for review, and it says if we file a petition for review, it will be handled the same as their petition for enforcement under E. That's pretty clear. So I didn't mean to ignore your question, but that we did not find any time limitation. Frankly, I anticipated that may be a question that your Honor may ask me today is have you filed your petition for review? So I wanted to be able to say we have, and we did check to see if there was any time limit. We didn't see any, so that was filed, and that action, we couldn't file it in this action, but we did find if you need a number, it's been given, case number 23-60293. Did your client raise any objections either the first time or the second time to the NLRB's assessment? They did not, Your Honor. Why not? We are where we are now, but it would have been helpful if we had something prior to that. I agree. I don't disagree with that, and I think the problem with the Board's position on that is they're conflating two different sections of the statute, and it is very confusing. I admit that. That really actually, the answer to your question brings me to the first part of my argument here. What they're relying on for the 20 days for the objections is contained in 29 U.S.C. Section 160C, and what's the last sentence or the last clause of Section C is where it gives the 20-day period for filing objections, but what it says is it doesn't say that if we don't file objections, we lose our appeal rights, as they're arguing to you today, that they're entitled to summary proceeding. What it says is if there are no exceptions filed within 20 days, then the Board's decision, then the ALJ's decision becomes the final order of the Board. It doesn't say anywhere that we lose our appeal rights. Now, I use the word conflating. What they're confusing that with, E is a different section altogether. C is the one that deals with preparing the record, taking testimony, and how you reach a final Board decision. E and F are where we get to the appeals. There's also nothing in E or F that says if we didn't file objections, then we don't get our appeal rights. There's nothing that, and maybe your opponent would be better suited to answer this, is there anything that indicates that those arguments are forfeited if they're not lodged as objections within the 20-day period? I don't believe so. Are there any cases that say the opposite in support of your position? I haven't seen any on that. I have looked at the cases that they rely on. One is the U.S. Supreme Court's decision from a while back, Wohlke. I have it here, and it doesn't say anything about, excuse me, let me ... The Wohlke decision that they rely on, they rely on a quote from pages starting at about page 666 of United States, of 456 U.S. 645 is the case citation, and what it says here is it says, the Court of Appeals without jurisdiction to consider that question, the issue was not raised during the proceedings before the Board. It says during the proceedings with the Board. It doesn't say during that 20-day window, and in fact, if you take a quick look at the word exceptions, it uses the word exceptions. It doesn't use the word objections. Objections comes into play in section E and F, and what it says, and it doesn't say we lose our appeal rights, it basically says that no objection that has not been urged before the Board, its member, agent, or agency shall be considered by the Court unless the objection shall be excused because of extraordinary circumstances. It's not really that much different from the rule in ordinary proceedings that if you haven't made an argument to the district court, you can't raise it for the first time on appeal. We get that. Thank you, counsel. Okay. Mr. Beyer, but you've saved time for rebuttal. Oh, thank you. All right, Mr. Havenstreet. I guess the first question, which I believe Judge Oldham asked, is why we do not have a record in this case to peruse. We would be happy to file the record. Your Honors, typically we do not file the record in these summary enforcement cases because . . . Have you looked at the July 2014 order dismissing the case? Yes, Your Honor. What does it say, since I haven't seen it? We quote it in part in our pleadings. What I see in your pleading, are you just talking about the motion for summary enforcement? I'm sorry, the . . . When you say pleadings, are you . . . The motion, or we filed a response to the answer. Is that where I would find the quotes? I think it's in the response to the answer. The gist of it was, and the Board issued an order vacating under null canning, because of null canning, and we said that we would retain the case on the docket, and it contemplated further action. I don't have the exact . . . Take further action as appropriate. Yes, as appropriate. What would be the best case for the idea that the Board can dismiss an enforcement action, wait eight years, reinstate it, sua sponte, and then ask a federal court to summarily enforce the Board's action? I wanted to address that, because I think my colleague, my counterpart, misstates when he says the Board dismissed the case. As you would understand, as judges, retaining a case on the docket is not dismissing it. Your words are . . . We dismissed the court action, because we no longer had a Board order to enforce. But the idea was we vacated the order, because the order couldn't stand, and clearly in contemplation of further action. And this was routine. The Board was dealing with many, many of these cases, and if they were in the courts of appeals, it depended on the status. If we had filed the record already, we would seek a remand, and if we had not filed the record, because the Board and the court have concurrent jurisdiction until the record is filed, the Board would simply dismiss the case, and we then moved . . . excuse me, would vacate its order. We would then move to dismiss the action from court, and this court characterized it as mootness. I don't think we did in our pleading, because there was no longer a Board order to review. And it was certainly not a case where we then said, let's hold this for eight years and decide what to do with it. I mean, it was pretty routine for the Board to take these cases back, re-decide them. Cases on the merits, that was actually a substantive process, even if the result was only putting out a decision saying, we adhere, we agree with the old decision. And this one just got lost in the shuffle. I can understand that. There's lots of them, right? It's an administrative oversight. Yes. There are not a lot of administrative oversights like this, just to be clear. I totally understand that, and I realize you have a lot of them. I realize Noel Canning was a landmark Supreme Court decision, and it had a lot of impact on the Board and its decisions. The thing I'm hung up on is when the Board has an administrative oversight, your words, then it turns around and it says, eight years later, summarily enforce my order, deny the appeal rights and the opportunity to look at the record, the petition for review, all of the ordinary things that involve judicial review that otherwise legitimize agency action. That's an extraordinary step to me. The Supreme Court has told us that if men must turn square corners in dealing with the government, it's not too much to ask the government to turn square corners in dealing with us. And so the thing I'm hung up on is what is your authority for the idea that you can have an administrative oversight, you can file your reply in this case, the very one you're relying on, out of time, right? You missed that deadline too. But they get hammered. They don't get to appeal. They don't get a petition for review. They don't get to look at the record. We don't get to see all of the merits. Do you see the asymmetry? Not really, because it was already, the case was already in that posture in 2013, 2014. The employer had already had trials in front of administrative law judges, had the opportunity to take an appeal from that to the board, and did not do it. And so the case, I mean, both from the board view and then in court are basically over. I mean, Section 10C of the Act basically compels the result of where no exceptions are filed within 20 days, or the time the board will allow, that the board does issue an order regardless. And for that reason, those decisions, those judge decisions are not precedential, because the board has not passed on the merits. They are waived. And then similarly, and I don't know how much I need to discuss this, that Section 10E is a way, you know, I've never seen the argument that something that is called an exception, as opposed to, objection in the statute, I think it's pretty clear, is in the generic sense. And, you know, our standard opening pleading in this case, and I'm sure you've seen the arguments many times. And I would say, I mean, and if there's any sort of doubt about the nomenclature or whatever, there's a Supreme Court case, NLRB versus L.A. Tucker Truck Lines, that states the more general principle that it's not enough to object, but you have to object in the time and manner appropriate under the agency's rules, which is not just a board case, but a pretty simple principle. Is your view under 10C that if no objections are filed to the, before the board acts, so in that 20-day window, that there is no appeal right at all? Unless the board were to extend the time. I mean, I suppose, I don't know if there's no appeal right in terms of no jurisdiction. I mean, someone can always file a petition for review, but they would have no basis for it. And is that because nothing that happens prior to that 20-day window constitutes exhaustion? Am I understanding sort of the way they all, the various arguments link together? I'm not sure I understand the question. So the way I understand what you're saying, and just tell me where this is wrong, is that the 20-day window before the board's decision is the time to exhaust your, you as the respondent would be petition for review filer. Your time is that 20 days to say no substantial evidence, improper, you know, null canning problem, whatever. And if, it's not like you can file that before. And so if you don't file it in that 20-day window, then you're, that's what's prohibiting you from ever succeeding on a petition for review. Right, because you've waived your, you've basically waived your right to board review. And then the board adopts it as an order. And like I said, they could file a petition for review because that does become a final board order. Whereas, you know, they could not go, the party could not go straight to court on the, challenging the administrative law judge's decision because that's not an order of the board. So the board adopts that order as its own. And then, because actually less significant than 10-F petition for review is, we can then go for enforcement under 10-E because it's a final, a final board order. And what's filed before the administrative law judge? What's filed before? Yeah, by the parties. What, help me. Again, we don't have a record, so let me understand what's in there. In this case? Mm-hm. And actually, I think typically the filings to the administrative law judge are not part of the administrative record before the court. But there was a transcript. There's a transcript of hearing. I believe there were briefs. The judge's decision references arguments that were made. So why doesn't that count as exhaustion? Well, they, it's because they failed to take it to the next step from the administrative law judge. So you have to, you have to exhaust it over and over again. You can't just bring it to the administrative law judge and say, you know, here are my arguments. I, you know, I paid everybody. There was no overtime problem. I didn't, you know, do any union busting or something, whatever the things are. That that doesn't count. You have to continue to press it all the way to the board. Otherwise, it's forfeited. Basically, yes. Yeah, I didn't mean that to, I didn't mean it to be a trick question. I'm just, I'm. But it's basically levels, levels of review that you have a, you have a trial, you know, just as someone could not typically go straight from a district court to the Supreme Court in a case. You know, the, it's the board that's ultimately responsible. There's work that under the statute is given to administrative law judges to, to try the case, to try the cases and make the decisions. And then the next step is you take, it's your first appeal right in a sense. And then the second step would be to, to go to the court. And I think, I mean, as troubling as the delay in this case is, I think Rutter-Rex pretty much controls it. And particularly, I think it's, it's significant that, you know, this is a monetary case. There have certainly been cases where courts have questioned the board or reversed the board where there's been a combination of delay and some other sort of changed circumstance that, that makes the order itself not appropriate anymore. So this is another, yet another procedural irregularity on the board's half. It would have been helpful to have Rutter-Rex cited in the motion instead of filed as a letter yesterday, the day before argument. But I do appreciate you filing something before we showed up today so that at least I could read it this morning. And Rutter-Rex doesn't involve this at all, right? The question, as I understand it, in Rutter-Rex is, do the would-be beneficiaries of back pay get hammered by the fact that the board had this inexcusable eight-year delay? And by the way, it's not totally clear that the delay in Rutter-Rex is inexcusable, because the eight-year delay between the original proceedings and the actual board decision could have been explained by, like, the 450-some-odd page opinion that was written to justify the award. So it doesn't, this isn't a case, at least as far as I can tell, that involves either an administrative oversight, as you put it, nor is it one where the question presented is, are you hammering the company and their ability to file suit, a petition for review, exhaust their arguments in front of us, ensure that it was all procedurally regular the way we do in all of these board decisions? It was just on the merits of whether the award could take into account those delays. How am I misunderstanding the case? Well, we're in the same position, though, that ultimately the question is getting the relief to the victims of discrimination. And they are, you know, that is what we are ultimately standing for here. There was no dismissal. That's the thing that's so weird about this case, is that you, I take your point that the order says, and I will just take your word for it since we don't have the order. The order says, okay, we'll take further action as appropriate. But put yourself in their situation. All they get is an order from you saying, appeal dismissed, right, or whatever, motion for enforcement in the Fifth Circuit dismissed, and the underlying docket activity in the NLRB gone. Without prejudice, maybe it'll come back. And then eight years later, two floods later, all of the prejudice of the documents being lost and things that they've said, you come back and you say, okay, well, now we'd like to calculate back pay going back a decade, over a decade. And that's not what happened in Rutter-Rex, and it is an extraordinary position to put, in particular, a small company in. Well, first of all, the board did retain jurisdiction, and as a practical matter, and this I do not think will show up in the formal administrative record, but the current discussions between the board and the company, as counsel acknowledged or stated, back pay offers were made. And so the back pay has been cut off, in terms of every request the region has made to the employer, the back pay has been cut off at roughly the time of the judge's decision in the back pay case. There's growth in the amount due, basically due to interest. But yes, so we're not, and in some ways, we're all in a better position, I think, because of that, that we're not looking at a back pay clock that's continued to run. I think the board's order certainly put the employer, at best, could be confused and check and say, what is this, because we do say we're retaining the case. We don't say it's dismissed, it's closed. And in terms of the hardships, at the time the board vacated its order for this, I'm not going to say technical, because obviously the appointments clause is important, but I think your honors understand what I'm getting at. At that time, unlike Rutter-Rex or a lot of other cases where someone comes in and they've been prejudiced by delay, there wasn't an uncertainty. I mean, the employer had been, there was a dollar figure of you're going to have to pay this. They did not take an exception to that. It was going to have to be done. And the inability to pay and the changed circumstances with the flooding and so forth, the records don't really affect the ability to calculate the back pay because it is cut off. And to the extent that they're asserting an inability to pay, that's going to be based on their current situation and not how they got there. I did want to address that and to make the court aware that the board does work with parties, even with a judgment, upon a truly demonstrated inability to pay. We work on payment plans. Sometimes we, on behalf of the discriminanties, end up taking less in the end. We have no interest in driving employers out of business and maybe putting it more practically and cynically. We have no interest in continuing to pursue judgments that are basically, full judgments that are basically uncollectible. So that's a process. And at times in this case, before the Noel Canning decision, there were discussions. And again, that's not going to show up in a formal case record that's filed with the court. But it is part of the process. But I think saying that due to dire financial circumstances, we may end up taking less relief is not the same as saying that because they've fallen on hard times, the damages are any less and that the obligation should be less. That if tomorrow this company gets the biggest contract ever, that they should have to pay their employees less than they've already been awarded by the administrative law judge, whose decision was adopted by the board. I want to do a little housekeeping. I was making notes during the company's argument. Like I said, we're happy to file the record. There may have been some, we mentioned in our pleading, I think at the conclusion of our response to the answer, we said we were happy to file the record and brief it. Although I would hope at this point, given the clear waivers, I would hope the court has everything it needs. And maybe you would want us to file the record and pursue it from there without briefing. I mean, I'll also mention that the record documents are on the board's public website. These sort of things that are the equivalent of the docket filings. And- Counsel, how do you respond to the argument? I asked about the 20-day period and the impact of failing to object or file anything in response and whether, how preclusive that is, and your opponent offered an explanation of it under Section 10, or the Rule 10. How do you respond to that? I think that falls into the category of an exception is a form of objection that has not been urged before the board. I've seen no law to the contrary on that. As I mentioned, the Tucker Truck Lines case seems to make, makes clear that we're not, that if you have a way too late, you can't get around the 10E bar by filing something that's way too late under the court's, under the board's rules or under any agency's rules and say, you can't say we did, we urge an objection. We urge an objection a month, two months after the deadline. I think what's unusual here is that this deadline is statutory and in some ways, I mean, a hypothetical I was asking myself is what if the board saw an administrative law judge's decision that was so far out there and inappropriate that they felt that it shouldn't be adopted? You know, I think some, you know, I think some party, you know, some, there would be some concern of, and I don't know the answer to this, it's just a question I posed to myself, about whether the board even has the discretion to not adopt. I mean, all I can say is there was no exceptions. This is the order. You know, we have, I'd like to think some equitable discretion, but we're not a court. So probably less than that. So, you know, and it would also put us in an, I mean, if those decisions were reviewable, if you could, it seems like it would undermine any sort of requirement of raising something to the board to say, well, if you don't do it because it's an exception, which is also, by the way, what we call the board's rules in a regular, you know, I guess, that's, scratch that, that somehow you get to go straight to court from an administrative law judge decision. I mean, that would not be an order of the board. It's not the statutory structure, and it would be, we couldn't even defend it as an agency because the judge's decision isn't supported by substantial evidence, what the rationale is. The board hasn't passed on that. It's not a decision of the board. So I think the statutory structure and, you know, all of the language and all of the cases under Section 10e that often it's boilerplate language that leads to a more complicated question about whether something has been preserved, but I think it would make no sense with statutory structure to say you sort of have a choice. You can either go to the board or somehow have the board auto-adopt and go to court and have the board go into court and defend an administrative judge's decision that the board itself has not passed on. We have one more question. I think your time's, well, it's about to, it's expiring right now, but Judge Oldham has an additional question. I just have one last one, and I just, I didn't want to interrupt you for, out of respect for your time, but the court's gracious enough to give us a little bit of extra. So what about a more modest proposition?  But what about the more modest proposition, and I guess the question is what would be the hurdle here? I don't see it in 10c, and maybe there's a case that I haven't read. But the more modest proposition is where the board has an administrative oversight that causes prejudice to one of the parties that it's seeking money from, the board is equitably stopped from then asking us to enforce these exhaustion requirements. Because as it looks to me, these aren't jurisdictional. It's not like Congress said them. I understand the reasons for administrative exhaustion. We see a lot of these cases. It makes perfect sense in the mine run case where everybody's, you know, on the same page. You know, the cases are moving orderly. But when the train goes radically off the tracks, and it's the board that has done that, equitable estoppel or a doctrine like it would prevent the board from then turning around and saying, well, we get it. We're eight years late. We get it. We didn't file a reply refund time. We get it. We didn't cite the relevant cases to you and had to bring them up to you at oral argument. But you have to abide by, scrupulously, a 20-day window. I don't have, in your hypothetical, I don't know how far you would roll back the case. Do you have a new, I mean, a lot of the problems with delay are accentuated, depending on how far you would roll it back. We just forgive the 20 days. Because of the equities, there were other parties, you know, the employers, just one party. And everyone has an adverse effect from delay. And I don't think that a do-over, especially of a case that was basically done, a case that had been decided and was poised to be, you know, in every position, except for the composition of the board, ready to be summarily enforced. You know, none of the arguments, none of the delay has anything to do with the merits of the unfair labor, the merits of the back pay award or the unfair labor practice or the entitlement to relief. And it seemed like it would just be giving one side a do-over for no particular reason. I mean, the remedy, you know, nothing has changed in terms of the real world remedy. I guess I would emphasize that equitably, you know, there are two parties. I mean, it's a separate question of should they be able to, you know, go ahead and brief the case. And if that's all this argument is about, is about we're not going to summarily enforce your order, but we are going to continue on with the case. You know, I don't see that as necessary, but that's the court's judgment. We certainly would not have been surprised if before argument you would have requested briefing on the issues or whatnot. But I don't think there's anything that should change the availability in the event of briefing or whatnot of the same arguments we've made here about the waiver. And, you know, for a case that got delayed, but it got delayed at the point that was almost the, it's almost the equivalent of mandate hadn't issued yet. I mean, everything, everything had, was basically done. There was really not a way for this case to come out differently. And it seems like it would be a shame to just say let's do it all over again for reasons that don't have to do with violations of the National Labor Relations Act or appropriate remedies. Thank you. Anything? No. Okay. All right. Thank you, sir. Thank you very much, Your Honors. All right. Rebuttal, Mr. Kiggins. Thank you, Your Honor. I'll try to be quick here. I understand the Board's position is as a matter of statutory interpretation, we're just going to mush together Section C, 10C, and 10E, but that's not what the statute says. The statute is very clear. C is the portion of the statute that deals with creating a record, trying the case, and getting a final order of the Board. Much like in the district court, with all due respect, I think my opponent's analogy from going from district court to the Supreme Court doesn't work here. That's not what we're doing. Section C is what gets us through the equivalent of the district court, if it were a regular proceeding. Section E and F deal with the appeal. And their argument that we have to file objections during that 20-day period is similar to a post-trial motion presented to a district court. We've made these arguments. We've made the substantive arguments are in the record that we don't have yet, but I've looked at part of it because my predecessor gave me his file. He argued some of the substantive issues that are going to come out are that what I believe are going to come out. I don't have the trial record yet, but the proof, as I understand it, was undisputed that, yes, the three charging parties were laid off in January of 2010, but so were four or five other non-union supporters. They were laid off, too, because there was a lack of work. That's a substantive issue. And Judge Oldham, you . . . I think that one of my colleagues gave me a copy of your decision from 2020, I believe, and you set forth the standard. We review the board's finding of fact for substantial evidence. Congress has defined substantial evidence in terms of the record considered as a whole. So at a minimum, we don't lose our appeal rights. Maybe there's a different standard of review, but there's nothing in the statute. The board's interpretation to mush together Section C and Section E is just wrong. That may be their position, but there's nothing in the statute that supports it. The cases don't support it. The Supreme Court case they rely on, Wolke, I think is the name of it, says, if you haven't raised the argument anywhere in the board proceeding, then you can be deemed to have weighed that argument. That's under Section E. And I know I don't have much time left, but I do want to hit one other issue. The whole idea my opponent has presented the situation, well, we didn't really, or the argument, I wasn't quite clear what he was saying. We didn't really dismiss it. I didn't get to this, what we did, but I'm not sure what they did. I think what should have done, I alluded to this earlier, what should have happened, because there was a quorum back in 2014, they should have stayed the first action. They should have moved to stay it, and under this court's rule 42.4, it says, if there's a motion to stay further proceedings, the clerk can dismiss the case without prejudice. We do have a dismissal without prejudice in this case, but that sets a time limit for them to reinstate the case. It's 180 days under this court's rule. So if they had done what should have been done back in 2014, rather than just dismiss the case, they should have moved to stay it, then we would have a time limit of 180 days for them to go back to the board that's fully composed at that point to adopt the ALJ's decision, and then we could go through the process that we may go through now. Because they didn't do it, they sat on it for eight years, we really think the case should be dismissed, but alternatively, we would ask that you not grant summary enforcement, order the record to be filed in this case, and set a briefing on the merits, and we'll see what happens, what the record shows. Thank you. I'm done unless you have any other questions. Thank you. Thank you, counsel. We appreciate your briefing in this matter and your arguments here today, and the matter will be considered submitted.